# United States Court of Appeals
## For the First Circuit

No. 11-1944

CENTRAL PENSION FUND OF THE INTERNATIONAL UNION OF OPERATING
ENGINEERS AND PARTICIPATING EMPLOYERS ET AL.,

Plaintiffs, Appellants,

v.

RAY HALUCH GRAVEL CO.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Thompson, Selya and Dyk,[*]
Circuit Judges.

Kenneth L. Wagner, with whom Blitman & King LLP was on brief,
for appellants.
José A. Aguiar, with whom Doherty, Wallace, Pillsbury and
Murphy, P.C. was on brief, for appellee.

September 12, 2012

[*]Of the Federal Circuit, sitting by designation.

**SELYA**, **Circuit Judge**. This appeal requires us to resolve two issues of first impression in this circuit. The first, which has divided our sister circuits, relates to judgment finality. The second relates to what happens when an employer fails to keep appropriate records concerning work covered by the benefit-remittance provisions of a collective bargaining agreement. After careful consideration, we hold that the appeal is timely as to all issues and that both the judgment on the benefit-remittance claim and the judgment awarding attorneys' fees are open to appellate review. We further hold that these judgments must be vacated. Consequently, we remand to the district court for further proceedings consistent with this opinion.

## I. BACKGROUND

We briefly rehearse the background and the travel of the case, reserving more exegetic detail for our treatment of particular issues.

The defendant, Ray Haluch Gravel Co., is a landscape supply company in Ludlow, Massachusetts.[1] Over time, its primary operations have morphed from site work and excavation to the sale of landscaping products — but it continues to perform both types of work.

---

[1] There is some confusion in the record as to both the number of defendants originally sued and the correct corporate name of the employer (which is, for all practical purposes, the sole defendant). For simplicity's sake, we treat Ray Haluch Gravel Co. as the employer and defendant.

Beginning in 1988, the defendant entered into a series of collective bargaining agreements with the International Union of Operating Engineers, Local 98 (the Union), which maintains a hiring hall where employers may either seek Union referrals or directly hire workers. The collective bargaining agreement at issue here (the CBA) took effect on May 1, 2005 and expired on April 30, 2011. Under it, the defendant remitted contributions to an array of Union-affiliated benefit funds (the Funds) primarily on behalf of a single employee: Todd Downey. All of the Funds are employee benefit plans regulated under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461.

In 2007, the Funds commissioned audits of the defendant's books. Armed with the completed audits, they demanded additional remittances for previously unreported work allegedly covered by the CBA. The defendant demurred, and the Funds sued the defendant in the federal district court.[2] Pertinently, their complaint sought recovery of both unpaid remittances and attorneys' fees.

Following a three-day bench trial, the lower court took the matter under advisement and requested briefs (covering, inter

_____

[2] The Funds include Central Pension Fund of the International Union of Operating Engineers and Participating Employers; International Union of Operating Engineers Local 98 Health and Welfare, Pension and Annuity Funds; Local 98 Engineers Joint Training, Retraining, Skill Improvement, Safety Education, Apprenticeship and Training Fund; and International Union of Operating Engineers Local 98 and Employers Cooperative Trust. Each of the Funds sued through its appropriate fiduciary or fiduciaries. The Union itself is also a named plaintiff.

-3-

alia, the claim for attorneys' fees).  In line with this briefing order, the plaintiffs — having been granted extra time for this purpose — filed a motion for attorneys' fees.

On June 17, 2011, the district court issued an order resolving the claim for unpaid remittances.  It awarded the plaintiffs $26,897.41 referable to covered work performed by a specific employee (Martin Jagodowski), but denied recovery for any other work.  Int'l Union of Oper'g Eng'rs, Local 98 Health & Welfare, Pension & Annuity Funds v. Ray Haluch Gravel Co. (Haluch I), 792 F. Supp. 2d 129, 138 (D. Mass. 2011).  The court directed the entry of judgment for the plaintiffs,[3] explaining that it would rule on the claim for attorneys' fees in a separate decision.  Id.

On July 25, 2011, the court resolved the claim for attorneys' fees, awarding the plaintiffs $34,688.15.  Int'l Union of Oper'g Eng'rs, Local 98 Health & Welfare, Pension & Annuity Funds v. Ray Haluch Gravel Co. (Haluch II), 792 F. Supp. 2d 139, 143 (D. Mass. 2011).  At the end of its order, the court noted for the first time that "[t]his case may now be closed."  Id.  On August 15, 2011, the plaintiffs appealed the decisions in both Haluch I and Haluch II.

---

[3] The court did not direct the clerk to enter this judgment as a partial final judgment.  See Fed. R. Civ. P. 54(b).

-4-

## II. ANALYSIS

We subdivide our analysis into three segments. First, we discuss the timeliness of the appeal vis-à-vis the lower court's decision in Haluch I. Second, we consider the plaintiffs' plaint that the district court misconstrued the CBA and, in the bargain, did not appropriately resolve the claim for unpaid remittances. Finally, we turn to the claim for attorneys' fees.

### A. Timeliness of the Appeal.

The timeliness of an appeal in the federal courts is governed by the provisions of Rule 4 of the Federal Rules of Appellate Procedure. With narrow exceptions not relevant here (such as when the federal government is a party), an appeal in a civil case must be filed within either thirty days of the entry of a final judgment or thirty days after the district court's denial of one of several post-judgment motions. Fed. R. App. P. 4(a)(1)(A), (a)(4). These time limits are mandatory and jurisdictional. See Budinich v. Becton Dickinson & Co., 486 U.S. 196, 203 (1988).

In the case at hand, the plaintiffs filed their notice of appeal within thirty days following the district court's entry of judgment with respect to the claim for attorneys' fees. This was, however, more than thirty days after the district court had entered its previous and separate judgment as to the claims for unpaid remittances. The question reduces, then, to whether the notice of

-5-

appeal was timely as to the first judgment. This, in turn, requires us to determine whether the first judgment was a final judgment. See 28 U.S.C. § 1291 (conferring on the courts of appeals jurisdiction over "final decisions of the district courts").

The point of embarkation for this inquiry is Budinich, in which the plaintiff, after prevailing on an employment claim, sought to recover counsel fees under a state fee-shifting statute. 486 U.S. at 197. The plaintiff, who was dissatisfied with the outcome of the case on the merits, did not file a notice of appeal until after the district court resolved the claim for attorneys' fees. That notice was filed more than thirty days after the entry of judgment on the merits. See id. at 197-98.

The Budinich Court ruled that the appeal was untimely as to the merits of the employment claim. See id. at 199-203. It started with the conventional wisdom that a final decision under section 1291 is "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Id. at 199 (internal quotation marks omitted). It then noted that, in general, "a claim for attorney's fees is not part of the merits of the action to which the fees pertain." Id. at 200. In the usual case, "[s]uch an award does not remedy the injury giving rise to the action, and indeed is often available to the party defending against the action." Id. The judgment on the merits was,

-6-

therefore, final when rendered — the fees issue was wholly collateral — and the appeal should have been taken within thirty days thereafter. Id. at 203.

The defendant insists that Budinich is controlling here: in its view, the Budinich Court crafted a bright-line rule. But this characterization begs the question of where and how the line should be drawn. We must explore that conundrum.

The decisions of the courts of appeals on this point are in disarray. Some have held that Budinich applies to all claims for attorneys' fees. See, e.g., O & G Indus., Inc. v. Nat'l R.R. Pass. Corp., 537 F.3d 153, 167-68 & n.11 (2d Cir. 2008); United States ex rel. Familian Nw., Inc. v. RG & B Contractors, Inc., 21 F.3d 952, 954-55 (9th Cir. 1994); Cont'l Bank, N.A. v. Everett, 964 F.2d 701, 702 (7th Cir. 1992); First Nationwide Bank v. Summer House Joint Venture, 902 F.2d 1197, 1199-1200 (5th Cir. 1990). Other courts have held, on various rationales, that contractual claims for attorneys' fees may fall beyond the Budinich line. See Carolina Power & Light Co. v. Dynegy Mktg. & Trade, 415 F.3d 354, 356 (4th Cir. 2005) (concluding that a claim for attorneys' fees "not limited to expenses incurred during the underlying litigation is an element of damages" and that, therefore, "a judgment that leaves open such a claim is not final and appealable"); Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc., 312 F.3d 1349, 1355 (11th Cir. 2002) (per curiam) (holding

that "a request for attorneys' fees pursuant to a contractual clause is considered a substantive issue; and an order that leaves a substantive fees issue pending cannot be 'final'"); Justine Realty Co. v. Am. Nat'l Can Co., 945 F.2d 1044, 1047-49 (8th Cir. 1991) (explaining that attorneys' fees are part of the merits when sought under contract for, in part, pre-litigation costs incurred as a result of breach). At least one court has put a foot in each camp. See Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 137-38 (3d Cir. 2001) (concluding that certain contract-based attorneys' fees are outside the scope of Budinich but finding "no difference . . . for § 1291 finality purposes, between payment of attorneys' fees to a prevailing party under statute and payment . . . under the contract"). We have not yet had occasion to pass upon this issue.

We do not believe that Budinich should be read mechanically to apply to all claims for attorneys' fees, whatever their genesis. Such a mechanical reading overlooks the Supreme Court's acknowledgment that "[i]f one were to regard the demand for attorney's fees as itself part of the merits, the . . . . merits would then not have been concluded, and § 1291 finality would not exist." Budinich, 486 U.S. at 200 (emphasis in original). This acknowledgment unmistakably signals that, although the Budinich Court determined that attorneys' fees generally should be considered a collateral matter, they may sometimes be considered as

-8-

part of the merits.  Cf. Osterneck v. Ernst & Whinney, 489 U.S. 169, 175-77 (1989) (holding that prejudgment interest is part of the merits, distinguishing Budinich, and explaining that "as a general matter, a request for attorney's fees is not part of the merits of the underlying action because such fees are not part of the compensation for the plaintiff's injury but traditionally have been regarded as an element of costs awarded to the prevailing party").

Where, as here, an entitlement to attorneys' fees derives from a contract rather than from a statute, the critical question is whether the claim for attorneys' fees is part of the merits.  In this instance, the plaintiffs brought suit, at least in part, to enforce certain provisions of the CBA.  That agreement provided for the payment of attorneys' fees as an element of damages in the event of a breach.  Throughout the litigation, the plaintiffs, pursuant to the terms of the CBA, sought to recoup the attorneys' fees incurred as part of their collection efforts.  These included fees for legal services rendered prior to suit.  Viewed through this prism, the attorneys' fees must be considered an element of the plaintiffs' contractual damages.  It follows that when the district court entered judgment only for the unpaid remittances and explicitly left open the claim for attorneys' fees, the damages award was incomplete and the judgment was not final.  A judgment as to liability that does not resolve the question of damages is not

-9-

a final judgment within the purview of 28 U.S.C. § 1291 because the assessment of damages is an element of the cause of action itself. See Carolina Power & Light, 415 F.3d at 358; Ragan v. Tri-Cnty. Excav'g, Inc., 62 F.3d 501, 505-06 (3d Cir. 1995).

In an effort to blunt the force of this reasoning, the defendant argues that, under the CBA, only a prevailing party would be entitled to attorneys' fees and, thus, this case is on a par with Budinich. This purported distinction is of little moment here. The CBA states in pertinent part that "[a]ny costs, including legal fees, of collecting payments due these Funds shall be borne by the defaulting [e]mployer." There is no requirement that suit be brought and, thus, there is no requirement that the Funds be prevailing parties. For example, the quoted provision would apply when a fund attempts to collect contributions from an employer, who, after a period of recalcitrance, yields to the fund's demands before suit is brought.[4]

That ends this aspect of the matter. The plaintiffs consistently have asserted an entitlement to attorneys' fees under the CBA. Those fees are damages and, as such, are part of the merits of their contract claim. It follows, therefore, that they fall beyond the line drawn by the Budinich Court. Because no final judgment entered until the district court resolved the contract-

---

[4] The attorneys' fees at issue here graphically illustrate this point: they include remuneration for legal work performed before any formal litigation was commenced.

-10-

based claim for attorneys' fees, the plaintiffs' appeal is timely as to all the issues raised.

### B. **Unpaid Remittances**.

We turn next to the claim for unpaid remittances. Neither the district court's decision to order remittances referable to Jagodowski's work nor the amount of those remittances is contested on appeal. The plaintiffs argue, however, that the district court should have ordered additional payments with respect to certain unidentified employees.

Whether the defendant was required to remit certain payments is a matter of contract. See Gastronomical Workers Union Local 610 & Metro. Hotel Ass'n Pension Fund v. Dorado Beach Hotel Corp., 617 F.3d 54, 62 (1st Cir. 2010). Federal common law supplies the substantive rules by which labor agreements are interpreted. See Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985); Sweeney v. Westvaco Co., 926 F.2d 29, 36 (1st Cir. 1991) (Breyer, C.J.). A special gloss applies: a court interpreting a collective bargaining agreement must take an industry-specific view, considering "the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements." Transp.-Commc'n Emps. Union v. Union Pac. R.R., 385 U.S. 157, 160-61 (1966); see Senior v. NSTAR Elec. & Gas Corp., 449 F.3d 206, 220-21 (1st Cir. 2006). We review the district court's findings of fact for clear error and its

-11-

conclusions of law (including its interpretation of the CBA) de novo. See Dist. Lodge 26, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Techs. Corp., 610 F.3d 44, 51 (2d Cir. 2010); Smart v. Gillette Co. Long-Term Disab. Plan, 70 F.3d 173, 178 (1st Cir. 1995).

"In construing the terms of contracts that are governed by federal common law, we are guided by common-sense canons of contract interpretation." Smart, 70 F.3d at 178 (internal quotation marks omitted). One such canon holds that contract language is normally considered ambiguous "where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable difference of opinion as to the meaning of the words employed and obligations undertaken." Fashion House, Inc. v. K mart Corp., 892 F.2d 1076, 1083 (1st Cir. 1989). "If a contractual provision is not susceptible of reasonable but conflicting interpretations, it is not ambiguous." Avery v. Hughes, 661 F.3d 690, 694 (1st Cir. 2011). In the absence of an ambiguity, contractual language must be construed according to its plain and natural meaning. Smart, 70 F.3d at 178.

Three articles contained in the CBA are of particular pertinence here. Article I states that the CBA "shall apply to all work . . . in connection with all operations usually performed in the sand and gravel industry, described in Article IV." Article IV sets out various types of employee classifications. Article VI

-12-

requires benefit-remittance payments "for each payroll hour . . . for each employee covered by this Agreement."

The district court concluded that the CBA was ambiguous as to "how employees [were] to be classified" and, relatedly, the extent to which an employer was required to make contributions under Article VI. Haluch I, 792 F. Supp. 2d at 136-37 (emphasis in original). In reaching these conclusions, the court relied heavily on the fact that Article IV was couched in terms of employee classifications, not work descriptions per se. See id. at 134-36.

We find the district court's interpretation insupportable. Its construction of the CBA undervalues the sensible rule forbidding the "balkanization of contracts for interpretive purposes." Smart, 70 F.3d at 179. By virtue of Article I, the CBA applies to covered work; that is, work "in connection with all operations usually performed in the sand and gravel industry." Article IV is couched in terms of employee classifications, but this compendium (for example, the reference to "Maintenance Mechanic, Operators on shovels, cranes, drag-lines, bulldozers, plant operators, front end loaders, power leaders of all types and similar equipment") is obviously intended to describe covered work. By the same token, the text of Article VI ("for each payroll hour . . . for each employee covered by this Agreement") requires remittance for hours of covered work. Viewing these provisions in context and as a seamless whole, the only reasonable

-13-

interpretation is that an employer must remit benefit payments for each hour of work covered by the CBA.

Ironically, the district court's resolution of the claim relating to Jagodowski's benefits fits hand in glove with this interpretation. The court determined that seventy-five percent of Jagodowski's time was spent "operating and repairing heavy equipment such as front-end loaders and bucket loaders" and, thus, came within the ambit of the CBA. Haluch I, 792 F. Supp. 2d at 136. We think that this determination, which is not challenged on appeal, indicates the lack of ambiguity and bolsters our construction of the CBA.

The absence of any material ambiguity is of decretory significance here. Under both federal common law and labor law, an unambiguous contract must be enforced according to its tenor. Senior, 449 F.3d 219. Plain meaning prevails.[5]

This plain-meaning interpretation casts light on the plaintiffs' claim that they are entitled to remittances for covered work performed by unidentified employees. Under ERISA, "every employer shall . . . maintain records with respect to each of his employees sufficient to determine the benefits due or which may

---

[5] Because the language of the CBA is sufficiently clear, we eschew any further inquiry into the broader context surrounding its execution. See Senior, 449 F.3d at 219.

become due to such employees."  29 U.S.C. § 1059(a)(1).[6]  The statute further provides that "[t]he employer shall furnish to the plan administrator the information necessary for the administrator to make the [required] reports."  Id.

The evidence presented in the court below indicates quite clearly that some covered work was done by unidentified employees. The plaintiffs contend that the lack of required records triggered a burden-shifting paradigm under which the defendant had to show which hours represented covered work and which did not.  The district court rebuffed this contention, reasoning that the plaintiffs did not produce sufficient evidence to support a shifting of the burden.  Haluch I, 792 F. Supp. 2d at 138.  In charting this course, the court distinguished a line of cases proffered by the plaintiffs on the ground that, in those cases, "the relevant employees were . . . indisputably performing covered work, and the employer failed to maintain any records concerning the work performed"; whereas in this case the plaintiffs adduced "no evidence . . . indicating that any other classified employee actually performed covered work under the Agreement after

_____

[6] We note that at least one of the plaintiffs is a multi-employer benefit plan.  This feature would appear to call for the application of section 1059(a)(2) rather than section 1059 (a)(1). See Bard v. Bos. Shipping Ass'n, 471 F.3d 229, 230 & n.2 (1st Cir. 2006).  The parties, however, have argued the record-keeping point exclusively in terms of section 1059(a)(1), and we accept their implicit agreement that section 1059(a)(1) is the relevant statutory provision. See United States v. Bayard, 642 F.3d 59, 62-63 (1st Cir. 2011).

-15-

Jagodowski left."  Id. (emphasis in original).  We review the district court's rulings about the required quantum of proof and the legal effect of the ERISA record-keeping provision de novo.

There can be no question but that section 1059(a)(1) requires an employer to document work covered by a collective bargaining agreement.  See Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 566 (1985); Mich. Laborers' Health Care Fund v. Grimaldi Concrete, Inc., 30 F.3d 692, 695 (6th Cir. 1994); Combs v. King, 764 F.2d 818, 822-23 (11th Cir. 1985).  Although we have not previously spoken to the question, several other courts have concluded that an employer's failure to keep adequate records as required by section 1059(a)(1) may trigger burden-shifting.  See, e.g., Mich. Laborers' Health Care Fund, 30 F.3d at 695-96; Brick Masons Pension Trust v. Indus. Fence & Supply, Inc., 839 F.2d 1333, 1337-39 (9th Cir. 1988); Combs, 764 F.2d at 826-27.  Under any view, however, such burden-shifting is not automatic.  In a case like this one, in which ERISA-protected benefit plans seek to enforce remittance requirements, burden-shifting occurs only when a fiduciary seeking remittance of unpaid benefit contributions shows both that some employees performed covered work that was not reported to the benefit plan and that the employer neglected to maintain adequate records.  See Motion Picture Indus. Pension & Health Plans v. N.T. Audio Visual Supply, Inc., 259 F.3d 1063, 1066 (9th Cir. 2001).  In such a case, the

-16-

presumption is that the employer is liable for all hours potentially representing covered work. See Brick Masons Pension Trust, 839 F.2d at 1338-39. This presumption is rebuttable: to reduce its liability the employer must separate wheat from chaff and offer some evidence that will allow a court to calculate the extent of covered work previously unreported. See Motion Picture Indus., 259 F.3d at 1066; Combs, 764 F.2d at 826-27.

The burden-shifting paradigm makes good sense. As the Supreme Court noted in an analogous context, an employer should not "be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records [as required]." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 688 (1946); see Mich. Laborers' Health Care Fund, 30 F.3d at 697 (drawing the same analogy); Brick Masons Pension Trust, 839 F.2d at 1339 (similar). Put another way, an employer cannot evade responsibility for benefit remittances by the simple expedient of failing to keep the records that the law requires.

The circumstances of this case trigger the presumption. At trial, Joanne Martins, the defendant's president and the person who oversaw its day-to-day operations since 2006, testified that she had knowledge of work performed by the defendant's employees; that both the nature and volume of the work performed remained essentially the same during the period from 2006 to 2011; that she knew the extent of Jagodowski's duties; that, upon Jagodowski's

departure in 2006, other employees continued to use and maintain the equipment he had used; and that no records existed showing either who used that equipment or the number of hours it was used. Inasmuch as no remittances were made to the plaintiffs with respect to the work performed by the unidentified employees after Jagodowski left, Martin's testimony was sufficient to trigger the burden-shifting paradigm.

We do not accept the district court's suggestion that the burden-shifting cases are inapposite here. To begin, the court's conclusion that the plaintiffs had to show that employees performing covered work are "classified employee[s]," Haluch I, 792 F. Supp. 2d at 138, is incorrect because, as we have explained, the focal point of the inquiry contemplated by the CBA is covered work — not job classifications per se. Even more important, the district court's reasoning, if endorsed, would destroy the efficacy of the burden-shifting paradigm. The reality is that an employer has a strong incentive to underreport the number of covered employees because underreporting reduces the amount of the remittances it must make. Cent. States, 472 U.S. at 567; see Brick Masons Pension Trust, 839 F.2d at 1335-37. A view of the presumption that would leave the defendant better off if it kept fewer records rather than more would drain the presumption of any meaning.

-18-

To sum up, the presumption is that the defendant is liable "for all hours worked . . . in which [employees] were shown to have performed some covered work." Brick Masons Pension Trust, 839 F.2d at 1339. The employer, despite its record-keeping lapses, may offer evidence in an effort either to overcome the presumption or to limit its effect. In the absence of such evidence, however, the presumption controls.

Here, the benchmark for the operation of the presumption is the district court's determination that seventy-five percent of Jagodowski's work was covered by the CBA. Haluch I, 792 F. Supp. 2d at 136-37. From this determination, it can be presumed that one or more employees performed Jagodowski's work after he left, that those employees worked each year the same total number of hours as Jagodowski, and that seventy-five percent of that work was covered by the CBA. Accordingly, the defendant is presumptively liable for the same number of hours of covered work for each successive year through October 31, 2010 (the last date encompassed by the plaintiffs' claim).

As we have said, this presumption is rebuttable. So far, the defendant has not rebutted it. Nevertheless, the validity and contours of this burden-shifting paradigm have, until now, been a matter of guesswork within this circuit. Given this lack of clarity, we think that the fairest course is to vacate the challenged portion of the district court's decision in Haluch I and

remand so that the district court, applying the presumption and considering any countervailing evidence that the defendant adduces, may determine the amount of remittances owed on account of covered work performed by unidentified employees. Cf. Pruell v. Caritas Christi, 678 F.3d 10, 12-15 (1st Cir. 2012) (allowing plaintiffs to amend their complaint as a result of recent clarification in pleading requirements).

## C. **Attorneys' Fees**.

The plaintiffs' remaining assignment of error posits that the district court's award of attorneys' fees was too skimpy. The district court's fee calculation rested appreciably on the plaintiffs' lack of success in recovering remittances referable to unidentified employees. See Haluch II, 792 F. Supp. 2d at 142-43. Because we have ruled that the plaintiffs are entitled to some level of payment for this work, see supra Part II(B), a principal pillar of the district court's calculus has been removed. Consequently, the fee award will have to be recalculated after the appropriate amount of unpaid remittances is determined. See, e.g., Cordero v. De Jesus-Mendez, 922 F.2d 11, 19 (1st Cir. 1990) (directing recalculation of fee award in light of changes to award of damages).

As a practical matter, this circumstance counsels persuasively against any consideration of the adequacy of the fee award at this juncture. Courts ought not to venture advisory

opinions, and there is nothing to be gained by passing upon the appropriateness of a fee award that must in all events be recalculated. We therefore deny this aspect of the plaintiffs' appeal without prejudice to their right to renew it if, upon the issuance of a reformulated fee award, they remain aggrieved.[7]

## III. CONCLUSION

We need go no further. For the reasons elucidated above, we hold that the plaintiffs' notice of appeal was timely filed as to all issues in the case. We vacate the district court's judgments in both Haluch I and Haluch II, and remand for further proceedings consistent with this opinion. All parties shall bear their own costs.

In refashioning the award of overdue benefit-remittance payments, the district court should reinstate that portion of its previous award referable to work performed by Jagodowski (a portion of the award that was not challenged on appeal).

**So Ordered.**

---

[7] The defendant has filed a cross-appeal with respect to the award of attorneys' fees (No. 11-1970). By separate order, we have dismissed that appeal without prejudice.