# United States Court of Appeals
## For the First Circuit

Nos. 11-1944
    11-1970

CENTRAL PENSION FUND OF THE INTERNATIONAL UNION OF OPERATING
ENGINEERS AND PARTICIPATING EMPLOYERS ET AL.,

Plaintiffs, Appellants/Cross-Appellees,

v.

RAY HALUCH GRAVEL CO. ET AL.,

Defendants, Appellees/Cross-Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Thompson, Selya and Dyk,[*]

Circuit Judges.

Kenneth L. Wagner, with whom Blitman & King LLP was on brief,
for appellants/cross-appellees.
José A. Aguiar, with whom Doherty, Wallace, Pillsbury and
Murphy, P.C. was on brief, for appellees/cross-appellants.

March 11, 2014

---

[*]Of the Federal Circuit, sitting by designation.

**SELYA, Circuit Judge.** Although parties to civil litigation typically bear the burden of paying their own counsel, see Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975), statutes and contractual provisions sometimes alter that burden. When fee-shifting is in order, the trial judge, having superintended the litigation, has a superior coign of vantage — and he is expected to put his "acquired savvy . . . to good use" in determining the amount of the award. United States v. Metro. Dist. Comm'n, 847 F.2d 12, 15 (1st Cir. 1988).

In this case, the plaintiffs, after a bench trial, obtained a money judgment. Later, the judge made a fee award that pleased nobody. Both sides have appealed, challenging the amount of the award. After careful consideration, we conclude that the award fell within the spacious encincture of the judge's discretion. Accordingly, we affirm.

We sketch the relevant background and travel of the case. In 2009, the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, together with various affiliates (collectively, the Fund), sued Ray Haluch Inc. (Haluch)[1] to recover unpaid employee-related remittances allegedly due under a collective bargaining agreement (the CBA). The Fund's

---

[1] Although the Fund's complaint purported to name other defendants including Ray Haluch Gravel Co., the record reflects that Ray Haluch, Inc. is the only existing corporate entity among those named.

complaint included a prayer for attorneys' fees and costs pursuant to both the CBA and the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461.

A bench trial ensued and, on June 17, 2011, the district judge awarded the Fund damages in the amount of $26,897.41. See Int'l Union of Oper'g Eng'rs, Local 98 Health & Welfare, Pension & Annuity Funds v. Ray Haluch Gravel Co. (Haluch I), 792 F. Supp. 2d 129, 138 (D. Mass. 2011). The judge rejected the Fund's other claims for damages, including a claim for $156,988.54 allegedly owed on behalf of "John Doe" employees.[2] See id. at 137-38. In a separate and subsequent ruling, the judge awarded the Fund $18,000 in attorneys' fees, together with expenses of $16,688.15. See Int'l Union of Oper'g Eng'rs, Local 98 Health & Welfare, Pension & Annuity Funds v. Ray Haluch Gravel Co. (Haluch II), 792 F. Supp. 2d 139, 143 (D. Mass. 2011). The award represented a steep reduction from the sum sought in the Fund's fee request. See id.

The Fund appealed both the merits ruling and the fee award. Haluch cross-appealed, asserting that the fee award was overly generous. We entertained both appeals; held that the district court had committed reversible error with respect to its formulation of damages, see Cent. Pension Fund of the Int'l Union

_____

[2] A major part of the Fund's case centered on its allegation that Haluch had employed certain unidentified persons, whom it termed "John Doe" employees, without paying required employer contributions to benefit plans. The Fund sought to recover damages with respect to these unpaid remittances.

-3-

of Oper'g Eng'rs & Part'g Emp'rs v. Ray Haluch Gravel Co. (Haluch III), 695 F.3d 1, 7-11 (1st Cir. 2012), and therefore deferred any consideration of the claims of error directed at the decision in Haluch II, see id. at 11 & n.7.

On certiorari, the Supreme Court reversed, holding that we lacked jurisdiction to review the Haluch I damage judgment because the Fund's notice of appeal was untimely as to that judgment. See Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Oper'g Eng'rs & Part'g Emp'rs (Haluch IV), 134 S. Ct. 773, 783 (2014); see also Fed. R. App. P. 4(a)(1)(A). In the wake of the Supreme Court's remand order, we dismissed the Fund's appeal insofar as it sought to challenge the Haluch I damage judgment and reinstated the cross-appeals challenging the separate judgment for fees and costs. We now turn to the assignments of error memorialized in these cross-appeals.

We review the amount of an award of attorneys' fees for abuse of discretion. See Spooner v. EEN, Inc., 644 F.3d 62, 66 (1st Cir. 2011). This standard is highly deferential, and "we will set aside a fee award only if it clearly appears that the trial court ignored a factor deserving significant weight, relied upon an improper factor, or evaluated all the proper factors (and no improper ones), but made a serious mistake in weighing them." Gay Officers Action League v. Puerto Rico (GOAL), 247 F.3d 288, 292-93

-4-

(1st Cir. 2001).  Within this rubric, a material error of law is always an abuse of discretion.  See id. at 292.

Here, the Fund's putative entitlement to attorneys' fees rests on two independent grounds: the CBA's language, see Haluch III, 695 F.3d at 6-7, and ERISA's fee-shifting provision, see 29 U.S.C. § 1132(g)(2)(D).  Neither party has argued that the Fund's right to attorneys' fees under the CBA differs in any material respect from its corresponding right under ERISA.  We therefore see no need to distinguish between these two sources of rights and, for ease in exposition, discuss the pending appeals in terms of ERISA.

ERISA provides in pertinent part that a district court shall award "reasonable attorney's fees and costs" to an employee benefit plan when the plan succeeds in securing a judgment for a violation of 29 U.S.C. § 1145 (as the Fund did here).  29 U.S.C. § 1132(g)(2)(D).  This provision mirrors provisions found in a compendium of other laws in which Congress has granted courts the authority to award reasonable attorneys' fees and costs to prevailing parties.  See, e.g., 29 U.S.C. § 216(b); 33 U.S.C. § 1365(d); 42 U.S.C. §§ 1988(b), 7604(d).  When analyzing such agnate provisions, "we apply the vast body of jurisprudence which has sprung up in the crowded vineyard where Congress has planted a proliferous array of fee-shifting statutes."  Metro. Dist. Comm'n, 847 F.2d at 15; accord Indep. Fed'n of Flight Attendants v. Zipes, 491 U.S. 754, 758 n.2 (1989).

The calculation of shifted attorneys' fees generally requires courts to follow the familiar lodestar approach. See Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551-52 (2010). One hallmark of this approach is flexibility. See Metro. Dist. Comm'n, 847 F.2d at 15.

In fashioning the lodestar, the first step is to calculate the number of hours reasonably expended by the attorneys for the prevailing party, excluding those hours that are "excessive, redundant, or otherwise unnecessary." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). The second step entails a determination of a reasonable hourly rate or rates — a determination that is often benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and competence. See GOAL, 247 F.3d at 295. The product of the hours reasonably worked times the reasonable hourly rate(s) comprises the lodestar.

The lodestar may be further adjusted based on other considerations. See Coutin v. Young & Rubicam P.R., Inc., 124 F.3d 331, 337 (1st Cir. 1997). Prominent among these considerations is the degree of a prevailing party's success. See Hensley, 461 U.S. at 440 (explaining that "the extent of a plaintiff's success is a crucial factor" to be considered in tailoring the final award).

In this case, the district court patiently pursued the path paved by previous precedents in fashioning an award of

attorneys' fees.  It identified reasonable rates for the legal and paralegal services provided.  See Haluch II, 792 F. Supp. 2d at 140-41.  It then examined the claimed hours and, based on a finding that some hours were excessive and/or unnecessary, reduced them by one-third across the board.  See id. at 141-42.  These computations yielded a lodestar of $84,656.50.  See id. at 142.  So far, so good: the Fund mounts no challenge to these aspects of the district court's handiwork — at least no challenge that is sufficiently articulated to merit appellate attention.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (holding that "issues adverted to in a perfunctory manner . . . are deemed waived").

Building on this foundation, the district court adjusted the lodestar value to $18,000.  Relatedly, it ordered expense reimbursement in the sum of $16,688.15.  It based the steep reduction in the lodestar value largely on two considerations.

First, the judge observed that the damages recovered amounted to only $26,897.41 and that, of this amount, only $10,267.11 represented delinquent employer contributions.  See Haluch II, 792 F. Supp. 2d at 142.  This sum, the court noted, was far less than the nearly $200,000 in damages that the Fund had aspired to recover.  See id.  Moreover, the Fund had not prevailed on the crucial claim that employer contributions were due for "John Doe" employees.  See supra note 2 and accompanying text.  Thus, the Fund's success was "limited in comparison to the scope of the

-7-

litigation as a whole." Haluch II, 792 F. Supp. 2d at 142 (quoting Hensley, 461 U.S. at 436). Second, the court remarked that the initial lodestar calculation dwarfed the damage award ($26,897.41). Id. at 142-43.

Against this historical backdrop, we start with the Fund's appeal. That appeal challenges what the Fund envisions as the paltriness of the fees. In seeking a more munificent award, it argues that the district court was too focused on proportionality. Its argument relies on case law rejecting a strict rule requiring proportionality between damage awards and fee awards. See, e.g., Orth v. Wis. State Emps. Union, Council 24, 546 F.3d 868, 875 (7th Cir. 2008); UAW Local 259 Soc. Sec. Dep't v. Metro Auto Ctr., 501 F.3d 283, 292-95 (3d Cir. 2007); Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway, 46 F.3d 1392, 1401 (6th Cir. 1995). In light of this case law, the Fund says, the district court's emphasis on proportionality constitutes an abuse of discretion.

The cases catalogued by the Fund cannot bear the weight that the Fund loads upon them. These cases refuse to impose a requirement that trial judges make fee awards proportionate to the damages recovered. But this view is hardly controversial given the Supreme Court's conclusion that fee awards need not be proportional to damage awards. See City of Riverside v. Rivera, 477 U.S. 561, 580-81 (1986) (plurality op.); see also Diaz v. Jiten Hotel Mgmt.,

Inc., 741 F.3d 170, ___ (1st Cir. 2013) [No. 13-1444, slip op. at 15-19] (rejecting strict proportionality rule vis-à-vis state fee-shifting statute).

In a lodestar case, refusing to require that fee awards be strictly proportionate to damages awards makes eminently good sense. We agree with Judge Posner that "[t]here are fixed costs of litigation," so a rigid proportionality rule would allow defendants to "inflict[] with impunity small losses on the people whom they wrong." Orth, 546 F.3d at 875.

None of the cases cited by the Fund holds (or even suggests) that a fee-setting court is forbidden, in appropriate circumstances, from considering proportionality as one factor among many in determining the amount of fees. The law is to the contrary: the City of Riverside Court explained that "[t]he amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded." 477 U.S. at 574. Withal, proportionality is not to be given decretory significance but, rather, is simply one item in the constellation of factors to be assessed. See id. The law of this circuit is consistent with that admonition; it recognizes that a fee-setting court can take the amount of damages recovered into account. See, e.g., Coutin, 124 F.3d at 339-40; Foley v. City of Lowell, 948 F.2d 10, 19-20 (1st Cir. 1991).

This is not to say that, when setting fees, a judge can scrap the lodestar structure in favor of a rigid rule of proportionality. That would be an abuse of discretion: proportionality cannot be used as the sole determinant of a lodestar-based fee award.[3] <u>Joyce</u> v. <u>Town of Dennis</u>, 720 F.3d 12, 31 (1st Cir. 2013).

In the case at hand, the district court plainly understood that a proportionality standard should not be mechanically applied. <u>See</u> <u>Haluch II</u>, 792 F. Supp. 2d at 143. It nonetheless concluded (reasonably, we think) that proportionality was a particularly relevant factor here. <u>See</u> <u>id.</u> We conclude that this use of proportionality as a factor (but not the exclusive factor) in setting the amount of the fee award was within the court's discretion. This conclusion is especially compelling in a case — like this one — that involves private parties and little articulated public interest in the judgment.[4]

---

[3] Judicial hostility toward the rigid use of proportionality as the sole determinant of a lodestar-based fee award is especially strong in contexts (such as civil rights actions) in which the public interest vindicated by a damage award may far outstrip the amount of dollars involved. <u>See</u> <u>City of Riverside</u>, 477 U.S. at 574-76; <u>Díaz-Rivera</u> v. <u>Rivera-Rodríguez</u>, 377 F.3d 119, 125 (1st Cir. 2004); <u>see</u> <u>also</u> <u>City of Riverside</u>, 477 U.S. at 586 & n.3 (Powell, J., concurring in the judgment) (drawing contrast between civil rights cases and private actions).

[4] We do not mean to imply that the public lacks any interest in private companies complying with labor law requirements. Rather, we only intend to note what is obvious: that there is no particular public interest in the judgment that has been returned in this case.

This leaves the vitality of the fee award as a whole. That award reflects an unusually large adjustment to the lodestar. But in evaluating this adjustment, we must recall that the court factored into the fee-shifting calculus not only the relatively modest size of the damage award but also the huge disparity between the amount of damages sought (nearly $200,000) and the much smaller amount of damages actually recovered ($26,897.41). See id. at 142. The court also considered that the Fund had been unsuccessful in pursuing a major part of its case — its claims related to the "John Doe" employees, see supra note 2 and accompanying text — and a fee-setting court has broad latitude to disallow attorneys' fees with respect to time spent on unsuccessful claims. See, e.g., Hensley, 461 U.S. at 434-35; Coutin, 124 F.3d at 339.

The juxtaposition of these facts showed that the Fund's success was quite "limited in comparison to the scope of the litigation as a whole." Haluch II, 792 F. Supp. 2d at 142 (quoting Hensley, 461 U.S. at 436). Taking into account the totality of these idiosyncratic circumstances, we cannot say that the modest lodestar value formulated by the district court constituted an abuse of discretion.

We turn now to Haluch's cross-appeal, which derives from the travel of the Fund's lawyers from Syracuse, New York to Springfield, Massachusetts to attend court sessions. The district judge thought that this travel was reasonably necessary and, in

-11-

addition to the fee award, ordered reimbursed travel-related expenses that included mileage ($2,239.82), meals ($439.64), and kindred charges ($1,205.61).

Haluch impugns the district court's treatment of attorney travel, arguing that attorney hours spent in transit were not properly identified and were not billed at a discounted rate. Accordingly, Haluch seeks a reduction of the fees as well as disallowance of travel-related expenses.

It is settled beyond hope of contradiction that "an attorney's travel time may be reimbursed in a fee award." Hutchinson ex rel. Julien v. Patrick, 636 F.3d 1, 15 (1st Cir. 2011). Similarly, reasonable costs associated with attorney travel may be reimbursed. See Bos. & Me. Corp. v. Moore, 776 F.2d 2, 11 (1st Cir. 1985). And while travel time is frequently reimbursed at reduced hourly rates, "there is no hard-and-fast rule" requiring such a discount. Hutchinson, 636 F.3d at 15.

With respect to attorney travel, the district judge has wide (though not limitless) discretion. Here, the judge made an across-the-board one-third reduction to billed hours to account for a multitude of factors, including a motley of "excessive or unnecessary charges." Haluch II, 792 F. Supp. 2d at 142. After implementing this across-the-board cut, the judge settled upon the lodestar. See id. He then arrived at the final fee award by slashing the lodestar by more than seventy-five percent.

We readily acknowledge that the court below chose to paint with broad strokes, treating the Fund's fee application globally instead of going item-by-item. But the parties have not challenged the judge's decision to eschew an item-by-item canvass; and the judge's two-part determination neither to single out attorney travel for special attention nor to tinker with claimed travel expenses goes hand in glove with his across-the-board approach. Seen in this light, we do not think that the district court abused its wide discretion with respect to the treatment of travel time and expenses.

We need go no further. For the reasons elucidated above, we leave the parties where we found them. Consequently, we reject both of the pending appeals and affirm the district court's order awarding attorneys' fees and expenses.

**Affirmed. All parties shall bear their own costs on appeal.**