# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1887

_____

Rod Marshall, Trustee; Kim Quick, Trustee; Ron Kaminski, Trustee; Ron Fucinaro, Trustee; Frank Neuvirth, Trustee; Timothy McCormick, Trustee; International Union of Operating Engineers, Local 571; Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan; Contractors, Laborers, Teamsters and Engineers Pension Plan

*Plaintiffs - Appellees*

v.

Anderson Excavating & Wrecking Company, also known as Anderson Excavating Co.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 16, 2018
Filed: August 23, 2018

_____

Before SMITH, Chief Judge, BEAM and COLLOTON, Circuit Judges.

_____

SMITH, Chief Judge.

International Union of Operating Engineers, Local 571 ("Union") and trustees of the Contractors, Laborers, Teamsters, and Engineers ("CLT&E") Health and

Welfare Plan ("Welfare Plan") and Pension Plan ("Pension Plan") (collectively, "plaintiffs") sued Anderson Excavating and Wrecking Co. ("Anderson Excavating") under 29 U.S.C. § 185(a), 29 U.S.C. § 1132, and 29 U.S.C. § 1145. They requested that the district court order Anderson Excavating to pay the contributions it allegedly owes to the Welfare Plan and Pension Plan, along with interest, liquidated damages, and attorneys' fees and costs. The district court found Anderson Excavating liable to the plaintiffs for delinquent contributions under § 1145 and entered judgment against it and in favor of the plaintiffs in the amount of $11,956.96 in unpaid contributions; $8,817.96 in prejudgment interest; $8,817.96 in liquidated damages; $38,331 in attorneys' fees; and $516.50 in nontaxable costs.

On appeal, Anderson Excavating argues that the district court erred in determining (1) damages for unpaid contributions, (2) prejudgment interest, (3) liquidated damages, and (4) attorneys' fees. We conclude that the district court legally erred in applying the alter ego doctrine to justify an award of unpaid contributions for an alleged employee's work. Accordingly, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

I. *Background*
A. *Facts*

After a bench trial, the district court made the following findings of fact. *See Marshall v. Anderson Excavating & Wrecking Co.*, No. 8:14-CV-96, slip op. at 1–11 (D. Neb. Aug. 11, 2016), ECF No. 77. Various construction labor unions and contractors established the Welfare Plan and Pension Plan to administer health benefits and a pension program for employees the unions represent. On May 30, 1996, Anderson Excavating, a construction business owned by Virgil Anderson, entered into an agreement with the Union, which "recognized the Union as the 'exclusive collective bargaining agent for all employees within the contractually described bargaining unit on all present and future job sites within the jurisdiction of the Union.'" *Id.* at 2 (quoting Ex. 30).

Anderson Excavating entered into a collective bargaining agreement (CBA) with the Union. It provides, in relevant part, that the parties must comply with agreements establishing the Welfare Plan and Pension Plan. The CBA states that Anderson Excavating must contribute $4.00 to the Welfare Plan and $2.45 to the Pension Plan for each hour employees "worked on projects in Douglas, Cass, Washington, Sarpy, that portion of Saunders County lying east of Highway 109 extended north and south to the County Line for each employee covered by this Agreement." *Id.* (quoting Ex. 1 at 16). Separate CBA provisions detailed the types of employees the CBA covered.

In 2013, the CLT&E commissioned an audit of Anderson Excavating's payroll. The CLT&E retained JoAnne Walde, a CPA for DeBoer & Associates, to audit Anderson Excavating's payroll for the period between January 1, 2010, and April 30, 2013. Walde testified that she used records Anderson Excavating provided to determine what type of work each of Anderson Excavating's employees performed. The records included a payroll summary report, W-2s, W-3s, 1099s, 1096s, and state unemployment records. She also explained that Dawn Helms, the CLT&E's contract compliance auditor, provided her with the Fringe Benefit Reports that Anderson Excavating had submitted to the CLT&E for the relevant time period.

Each Fringe Benefit Report lists the contributions Anderson Excavating made to the Welfare Plan and Pension Plan funds for a particular month. The Fringe Benefit Reports indicate that Anderson Excavating contributed to the Welfare Plan and Pension Plan each month from 2006 through 2015. Helms also gave Walde certain certified payroll records that Anderson Excavating had submitted to its general contractor on a project known as the Kiewit Phelps job or the StratCom job. Walde testified that she conversed with Ilene Kahler, Anderson Excavating's office manager, concerning what work certain employees performed. Walde gave a list of employees to Kahler, and Kahler then made handwritten notes about the type of work each employee performed.

The records Walde reviewed and relied on actually came from two different but related companies owned by Virgil Anderson. Some of the records came from Anderson Excavating. The rest of the records came from a separately incorporated entity called Anderson Excavating Company Plus ("Anderson Plus"). Walde testified that no one told her there were two separate companies. Consequently, her audit report did not distinguish between the two companies.

After reviewing company records, Walde testified that she next divided the list of employees into two groups: operating engineers and those who were not operating engineers. Walde's understanding was that the CBA covered only work that the operating engineers performed. According to Walde, her next step was to identify any work that operating engineers performed that Anderson Excavating had not reported or remitted on. Walde created a document representing the variances between the hours of covered work that Anderson Excavating reported and the hours of covered work that Walde believed employees actually performed.

Walde sent a copy of the document to Helms and a modified version of the document to Kahler. Thereafter, according to Walde, she and Helms consulted with Kahler via telephone to reconcile some of the discrepancies. Unfortunately, all the discrepancies were not addressed. Following that call, Helms took over the audit.

Helms testified that she edited the document Walde provided to her. First, she identified certain employees who appeared to have performed covered work based on Anderson Excavating's certified payroll records from the StratCom job, but were not included on Walde's document. Helms then added those individuals to the document. Second, Helms and Kahler discussed the type of work that certain individuals performed. For example, if Kahler told her that a particular employee performed demolition work—non-covered work—then she removed that employee from Walde's document.

-4-

On January 8, 2014, Helms sent a letter to Anderson Excavating notifying it of the audit's completion and that Anderson Excavating owed the CLT&E a total of $83,039.20. Helms attached two documents to the letter. The first document was a spreadsheet Helms created; it listed the names of seven employees—including Jose Tovar—whom Helms believed had performed covered work within the audit period that Anderson Excavating had not reported or remitted on. The spreadsheet also included the number of covered hours of work per month that Helms believed each employee had performed during the audit period, but for which Anderson Excavating had not yet remitted its contribution. In addition, Helms's spreadsheet detailed her calculation of the contributions Anderson Excavating owed to the CLT&E based on those hours of work. Finally, the spreadsheet contained Helms's notes explaining her determinations. Helms indicated that Anderson Excavating had included Tovar's hours of work for November 2012 "on the Certified Payroll but not remitted." *Id.* at 10 (quoting Ex. 11 at 3). With respect to the remainder of Tovar's hours, Helms noted, "Mechanic, employer estimated that 15% of his hours were worked on the jobsite." *Id.* (quoting Ex. 11 at 4).

Helms also attached a second document to the letter, which contained Helms's calculation of the liquidated damages and interest that she determined Anderson Excavating owed to the CLT&E based on its delinquent contributions. According to Helms, she performed those calculations pursuant to the CLT&E's "Delinquent Policy and Procedure." *Id.* (citing Ex. 8). The trustees of the Welfare Plan and Pension Plan first adopted this policy on February 19, 1985. Helms testified that the policy had not been altered since its adoption. The policy provides for an interest rate of 1.5 percent of the total contributions owed for each month that the contributions are delinquent. It also provides for liquidated damages in the amount of $0.02 per hour of work per month that the contribution on that month was delinquent.

After Helms sent the audit letter to Anderson Excavating, Kahler requested that Helms make certain changes to the audit. Specifically, Kahler wanted to clarify that

Tovar did not work any hours at job sites. According to Helms, she presented Kahler's requested changes to the trustees of the Welfare Plan and Pension Plan, but that they did not authorize her to make the changes.

Virginia Anderson, the wife of Virgil Anderson and the current president of Anderson Excavating, testified that the audit letter and its attachments failed to accurately reflect the work that Anderson Excavating's employees performed during the audit period. In relevant part, she testified that Tovar (1) was an employee of Anderson Plus, not Anderson Excavating; and (2) worked mostly as a mechanic at the shop. Although Anderson did not dispute that Tovar worked as an operating engineer for 18 hours in November 2012, she did not believe Tovar spent 15 percent of his hours working at job sites, as the audit letter indicated.

## B. *Procedural History*

The plaintiffs sued Anderson Excavating under 29 U.S.C. § 185(a), 29 U.S.C. § 1132, and 29 U.S.C. § 1145, requesting that the district court order Anderson Excavating to make the contributions it allegedly owes to the Welfare Plan and Pension Plan, along with interest, liquidated damages, and attorneys' fees and costs.

Following a bench trial, the district court determined that Anderson Excavating failed to remit contributions to the Welfare Plan and Pension Plan for three employees as required by the CBAs, including Tovar.[1] As to Tovar, the court rejected Anderson

---

[1]The plaintiffs argued that Anderson Excavating failed to remit contributions for seven employees: Tovar, James D. Anderson, Joshua C. Baker, Jeff Hightree, Rodney Wachter, Manual Walker, and James L. White. The plaintiffs later withdrew their claim for contributions with respect to Walker, after discovering that Anderson Excavating had remitted contributions for his hours worked. The district court found Anderson Excavating liable for delinquent contributions with respect to Hightree, Wachter, and Tovar. Anderson Excavating challenges only the district court's finding of liability as to Tovar.

Excavating's argument that Tovar was an employee of Anderson Plus, not Anderson Excavating, and therefore is not covered under the CBA. Applying the corporate law standard, *see Minn. Laborers Health & Welfare Fund v. Scanlan*, 360 F.3d 925, 927–28 (8th Cir. 2004), the court found that Anderson Plus was the alter ego of Anderson Excavating based on Virginia Anderson's testimony "that Anderson Plus employees sometimes worked on Anderson Excavating jobs, and that at least one employee had done so full-time for 4 months," Slip op. at 18. In addition, "the [c]ourt credit[ed] Walde's testimony that [Anderson Excavating] provided her with records for both Anderson Excavating and Anderson Plus, and never informed her that the two companies were legally distinct entities." *Id.* Based on these two factual findings, the district court determined that "there is 'such unity of interest and lack of respect given to the separate identit[ies]' of the two corporations, that adhering to the corporate fiction would 'lead to an evasion of legal obligations.'" *Id.* (alteration in original) (quoting *Scanlan*, 360 F.3d at 928).

The court also rejected Anderson Excavating's argument that Tovar's work was not covered by the terms of the relevant CBAs. Anderson Excavating had emphasized that Tovar worked primarily at the shop and did not work 15 percent of his hours at job sites. But the court determined that "[a]lthough Virginia Anderson opined that 15% was not the correct figure, she offered no records, testimony, or other evidence suggesting a more accurate figure." *Id.* at 17–18. Because Anderson Excavating did not present such evidence, the court concluded that the plaintiffs could "rely on Kahler's representation to Helms as to the number of hours of covered work Tovar performed." *Id.* at 18 (citation omitted).

Finally, the court determined that the plaintiffs' claims for delinquent contributions as to Tovar were not barred by the statute of limitations or the doctrine of laches. The court determined that Anderson Excavating "is liable for delinquent contributions for 100% of the hours of work Tovar performed on the StratCom

project, and for 15% of the other hours of work Tovar performed during the audit period, as represented by the audit letter." *Id.* at 19 (citing Ex. 11).

The court ultimately awarded the plaintiffs $11,956.96 for unpaid contributions, which included the contributions Anderson Excavating did not remit on Tovar's work. The court calculated the unpaid contributions amount by "taking the number of hours of covered work Hightree, Tovar, and Wachter each performed that were not remitted on, and multiplying those hours by the contribution rates in effect at the time the hours were worked." *Id.* at 20.

The court also ordered Anderson Excavating to pay prejudgment interest on the delinquent contributions in the amount of $8,717.96 based on the Delinquent Policy and Procedure document. In doing so, it rejected Anderson Excavating's argument that prejudgment interest was inapplicable under Nebraska state law. It explained that 29 U.S.C. § 1132 requires the court to award the plaintiffs interest on the unpaid contributions based on "the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." *Id.* at 21 (quoting 29 U.S.C. § 1132).

In addition, the district court awarded the plaintiffs $8,717.96 in liquidated damages. *See* 29 U.S.C. § 1132(g)(2)(C) (requiring the court to award "an amount equal to the greater of" either "interest on the unpaid contributions" or "liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the total delinquent contributions). The interest awarded was $8,717.96. Twenty percent of the total delinquent contributions totaled $2,391.39. Because the interest on the unpaid contributions proved to be the greater amount, the district court awarded that amount.

The plaintiffs also received $38,331 in attorneys' fees and $516.50 in nontaxable costs. In awarding attorneys' fees to the plaintiffs, the court declined to reduce the fee award based on the plaintiffs' ultimate recovery. It found "that

[Anderson Excavating's] conduct was at least equally responsible for the scope of the litigation" and that "the nonmonetary aspects of the award are important to the plaintiffs, regardless of the arrearages ultimately recovered." *Marshall v. Anderson Excavating & Wrecking Co.*, No. 8:14-CV-96, 2017 WL 1054039, at *2 (D. Neb. Mar. 20, 2017). As to non-taxable costs, the court awarded $41.50 for postage expenses and $475 for auditing expenses, for a total nontaxable cost award of $516.50.

Anderson Excavating moved for a new trial, arguing, in relevant part, that the district court erred by "awarding damages for Jose Tovar's covered work . . . and . . . awarding prejudgment interest." *Marshall v. Anderson Excavating & Wrecking Co.*, No. 8:14-CV-96, 2017 WL 1050996, at *1 (D. Neb. Mar. 20, 2017). The court explained that "when [Anderson Excavating] argues that records were not maintained for Tovar because he was an employee of Anderson Excavating Plus, not Anderson Excavating, that is an explanation for [its] failure to meet its evidentiary burden—but it is not an excuse." *Id.* at *2. The court cited Kahler's estimation "that Tovar spent 15% of his time at job sites" and concluded that Anderson Excavating failed to satisfy its burden of "account[ing] for the time that Tovar spent working at its job sites." *Id.* The court also declined to "hold the plaintiffs' failure to plead an alter ego theory against it" because the court was unable to find any "indication in the record that [Anderson Excavating], prior to trial, asserted a denial or defense premised on the supposed corporate distinction between itself and Anderson Excavating Plus." *Id.* The court also noted that "nothing [Anderson Excavating] suggests could have been proffered would rebut the course of conduct upon which the [c]ourt's conclusion was based." *Id.* (citation omitted).

The court also rejected Anderson Excavating's argument that no basis existed to award prejudgment interest because the plaintiffs did not request it in their complaint. The court explained that "29 U.S.C. § 1132(g)(2) requires the [c]ourt to award interest or liquidated damages as provided by the benefits plan." *Id.* Further,

the court observed that Anderson Excavating failed to provide any legal authority for its claim that "Nebraska state law limits the remedies for this federal claim." *Id.*

## II. *Discussion*

On appeal, Anderson Excavating argues that the district court erred in determining (1) damages for unpaid contributions, (2) prejudgment interest, (3) liquidated damages, and (4) attorneys' fees.

"In this appeal from a civil bench trial, we review the trial court's findings of fact for clear error. Its conclusions of law are subject to de novo review." *Cooper Tire & Rubber Co. v. St. Paul Fire & Marine Ins. Co.*, 48 F.3d 365, 369 (8th Cir. 1995). We also review de novo "[m]ixed questions of law and fact that require the consideration of legal concepts and the exercise of judgment about the values underlying legal principles." *Id.* (citation omitted).

Anderson Excavating asserts that the district court erred in awarding damages to the plaintiffs for unpaid contributions based on Tovar's work because Tovar was employed by Anderson Plus, not Anderson Excavating. According to Anderson Excavating, the district court could not hold it "liable under an alter ego theory never pled" or raised by the plaintiffs. Appellant's Br. at 34. It notes that no averment exists in any of the plaintiffs' pleadings relating to Anderson Plus, which it claims is a completely separate entity. It argues that the court "sua sponte amend[ed] . . . the pleadings to create liability under a new CBA never pled by the Union." *Id.* (citations omitted). This conclusion, it argues, was erroneous because an alter ego theory of liability must be specifically raised in the pleadings. In addition, Anderson Excavating asserts that the plaintiffs failed to present any evidence that Anderson Plus was the alter ego of Anderson Excavating because "[t]here was no showing of [(1)] a disregard of corporate formalities"; (2) "any fraudulent use of the corporations"; or (3) "any intent to use the corporate form to perpetrate any injustice." *Id.* at 37.

-10-

We conclude that the district court legally erred in applying the alter ego theory of liability to support an award of unpaid contributions to the plaintiffs for Tovar's work. The plaintiffs never pleaded an alter ego theory in their complaint. *See, e.g.*, *Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310, 323 (6th Cir. 2014) (affirming district court's holding that "Plaintiffs have not pled an alter ego or piercing the corporate veil claim in their Fourth Amended Complaint and cannot now, when faced with summary judgment, assert this new theory of liability" (citation omitted)); *Counts v. MK-Ferguson Co.*, 680 F. Supp. 1343, 1347 n.3 (E.D. Mo.) ("Plaintiff has not pleaded alter ego liability against this defendant and it would not be possible to hold it liable on this basis given the claims advanced in the Second Amended Complaint."), *aff'd*, 862 F.2d 1338 (8th Cir. 1988).

Given that the plaintiffs did not raise an alter ego theory in their pleadings or at trial, the district court erred in raising the issue sua sponte. *See Ritchie v. Sempra Energy*, 703 F. App'x 501, 503 (9th Cir. 2017) (mem.) ("The district court erred in prematurely granting summary judgment to Sempra based on its *sua sponte* observation that Sanchez Ritchie had failed to allege that Sempra was responsible for the acts of its subsidiary Energia Costa Azul ('ECA'). Sanchez Ritchie did not prove, or even allege, that ECA was the alter ego of Sempra, beyond a bare allegation in the SAC that Sempra 'controlled' ECA. But Sempra did not raise the alter ego issue in its motion for summary judgment or its motion to dismiss."). While Anderson Excavating and Anderson Plus were discussed in trial testimony, there is no mention of the companies being alter egos of one another. As a result, this is not a situation in which "the district court acted well within its broad discretion under Fed. R. Civ. P 15(b)(1) to conform the amended complaint to include a veil-piercing claim" because the defendant was "on notice [the plaintiff] intended to pursue a veil-piercing theory." *See Stillman v. InService Am., Inc.*, 455 F. App'x 48, 51 (2d Cir. 2012) (summ. order) ("Defendants cannot plausibly claim they were prejudiced by such an amendment because they were on notice that Stillman intended to pursue a veil-piercing theory from at least July 1, 2009, when Stillman submitted his first

request to charge the jury on veil piercing, and they had within their custody and control all documents and witnesses relevant to rebutting Stillman's veil-piercing claim." (citation omitted)).

In addition, the district court appeared to apply an incorrect burden of proof in determining that Anderson Plus was the alter ego of Anderson Excavating. The district court "credit[ed] Walde's testimony that [Anderson Excavating] provided her with records for both Anderson Excavating and Anderson Plus, and never informed her that the two companies were legally distinct entities." Slip. op. at 18. But Anderson Excavating did not bear the burden of *disproving* that Anderson Plus was its alter ego; instead, the plaintiffs bore the burden of *proving* that Anderson Plus was the alter ego of Anderson Excavating. *Cf. Contractors, Laborers, Teamsters & Eng'rs Health & Welfare Plan v. Hroch*, 757 F.2d 184, 190 (8th Cir. 1985) ("We agree with the Company that there is a presumption that a corporation is a separate entity from its shareholders or officers and the party who wishes to pierce the corporate veil bears the burden of proving that there are substantial reasons for doing so." (citations omitted)); *see also* 1 Fletcher Cyclopedia Corporations § 41.28 ("[T]he burden [of proof] usually rests upon the plaintiff to establish that there is a basis for disregarding the corporate form. Such burden of proof is not met by simply alleging a pattern of corporate transaction; rather, some concrete evidence of ownership or interest must be alleged and established showing that the separate personalities of the corporation and the individual no longer exist." (footnotes omitted)).

Furthermore, the district court's crediting of Virginia Anderson's testimony that "Anderson Plus employees *sometimes worked* on Anderson Excavating jobs, and that *at least one* employee had done so full-time for 4 months," Slip op. at 18 (emphases added), is insufficient under our standard for showing that Anderson Excavating controls Anderson Plus "to the extent that [Anderson Plus] has independent existence in form only." *Greater Kan. City Laborers Pension Fund v. Superior Gen. Contractors, Inc.*, 104 F.3d 1050, 1055 (8th Cir. 1997) (citations

omitted). Furthermore, the plaintiffs offered no evidence to show that Anderson Excavating was using Anderson Plus "as a subterfuge to defeat public convenience, to justify wrong, or to perpetuate a fraud." *Id.* (citations omitted).[2]

In summary, we hold that the district court legally erred in applying the alter ego doctrine to justify an award of unpaid contributions for Tovar's work. Our holding necessarily impacts the remaining issues of prejudgment interest, liquidated damages, and attorneys' fees. For that reason, we decline to reach those issues. Should Anderson Excavating remain dissatisfied with the reconfigured amounts following remand, it may file another appeal challenging those calculations.

---

[2]*Superior Gen. Contractors, Inc.* sets forth the proper standard for piercing the corporate veil between two corporations. *See* 104 F.3d at 1055. The district court, however, applied the standard set forth in *Scanlan*, a "section 515 case [in which] this court cited the Tenth Circuit's federal common-law standard for piercing the corporate veil between a corporation and an individual, noting this court had previously concluded corporate officers could not be held personally liable under ERISA without a basis for piercing the corporate veil." *Carpenters Dist. Council of Kan. City Pension Fund v. JNL Constr. Co.*, 596 F.3d 491, 495 (8th Cir. 2010) (citing *Scanlan*, 360 F.3d at 927–29). That two-prong test is

> "(i) was there such unity of interest and lack of respect given to the separate identity of the corporation by its shareholders that the personalities and assets of the corporation and the individual are indistinct, and (ii) would adherence to the corporate fiction sanction a fraud, promote injustice, or lead to an evasion of legal obligations."

*Scanlan*, 360 F.3d at 928 (quoting *NLRB v. Greater Kan. City Roofing*, 2 F.3d 1047, 1052 (10th Cir. 1993)).

### III. *Conclusion*

Accordingly, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

_____