# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-3040

_____

Rod Marshall, Trustee; Kim Quick, Trustee; Ron Kaminski, Trustee; Ron Fucinaro, Trustee; Frank Neuvirth, Trustee; Timothy McCormick, Trustee; International Union of Operating Engineers, Local 571; Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan; Contractors, Laborers, Teamsters and Engineers Pension Plan

*Plaintiffs - Appellees*

v.

Anderson Excavating & Wrecking Company, also known as Anderson Excavating Co.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: April 14, 2021
Filed: August 6, 2021

_____

Before SMITH, Chief Judge, COLLOTON and ERICKSON, Circuit Judges.

_____

SMITH, Chief Judge.

International Union of Operating Engineers, Local 571 ("Union") and trustees of the Contractors, Laborers, Teamsters, and Engineers Health and Welfare Plan ("Welfare Plan") and Pension Plan ("Pension Plan") (collectively, "plaintiffs") sued Anderson Excavating and Wrecking Co. ("Anderson Excavating") under 29 U.S.C. § 185(a), 29 U.S.C. § 1132, and 29 U.S.C. § 1145.[1] They requested that the district court[2] order Anderson Excavating to pay the contributions it allegedly owes to the Welfare Plan and Pension Plan, along with interest, liquidated damages, and attorneys' fees and costs. The district court found Anderson Excavating liable to the plaintiffs for delinquent contributions under § 1145 and entered judgment against it and in favor of the plaintiffs in the amount of $11,956.96 in unpaid contributions; $8,817.96 in prejudgment interest; $8,817.96 in liquidated damages; $38,331 in attorneys' fees; and $516.50 in nontaxable costs.

Previously on appeal, Anderson Excavating argued that the district court erred in determining damages for unpaid contributions, prejudgment interest, liquidated damages, and attorneys' fees. We concluded that the district court legally erred in applying the alter-ego doctrine to justify an award of unpaid contributions for an alleged employee's work. Because "[o]ur holding necessarily impact[ed] the remaining issues of prejudgment interest, liquidated damages, and attorneys' fees[,] . . . . we decline[d] to reach those issues." *Marshall*, 901 F.3d at 944.

On remand, the district court removed all contributions for the alleged employee's work and recalculated the amount of prejudgment interest, liquidated damages, and attorneys' fees. In this second appeal, Anderson Excavating once again

---

[1]Portions of this opinion are taken from our prior opinion *Marshall v. Anderson Excavating & Wrecking Co.*, 901 F.3d 936 (8th Cir. 2018), without further attribution.

[2]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

argues that the district court erred in determining (1) prejudgment interest, (2) liquidated damages, and (3) attorneys' fees. We affirm.

## I. *Background*[3]

On May 27, 2004, Anderson Excavating entered into a collective bargaining agreement (CBA) with the Union. The CBA provides, in relevant part, that Anderson Excavating must contribute to the Welfare Plan and the Pension Plan "in accordance with the terms and conditions of the[ir] [respective] Trust Agreement[s]." Ex. 1 to Compl. at 16, *Marshall v. Anderson Excavating & Wrecking Co.*, No. 8:14-cv-00096-JMG-CRZ (D. Neb. 2014), ECF No. 1-1. The Welfare Plan's trust agreement, dated April 1, 1962, and the Pension Plan's trust agreement, dated January 1, 1967, give the trustees discretion to bring suit to enforce payment of contributions upon an employer's default. Both trust agreements include express language allowing the trustees to require an employer to pay a reasonable rate of interest and to take any legal action necessary to enforce payment.

In the first appeal, Anderson Excavating argued that the district court erred in determining (1) damages for unpaid contributions, (2) prejudgment interest, (3) liquidated damages, and (4) attorneys' fees. In reversing the district court on the unpaid-contributions issue, we explained:

> [W]e hold that the district court legally erred in applying the alter ego doctrine to justify an award of unpaid contributions for [the alleged employee's] work. Our holding necessarily impacts the remaining issues of prejudgment interest, liquidated damages, and attorneys' fees. For that reason, we decline to reach those issues. Should Anderson Excavating remain dissatisfied with the reconfigured amounts following remand, it may file another appeal challenging those calculations.

*Marshall*, 901 F.3d at 944.

---

[3]The relevant factual background is fully set forth in our prior opinion. *See id.* at 938–42.

Following remand, the plaintiffs again moved for attorneys' fees, prejudgment interest, and liquidated damages. Anderson Excavating opposed the motion.

In its order on remand, the district court removed all contributions for the alleged employee's work and awarded $4,285.88 in unpaid contributions to the plaintiffs.

Next, it addressed the plaintiffs' request for prejudgment interest. The plaintiffs submitted affidavits and exhibits computing prejudgment interest in the amount of $556.43. Anderson Excavating objected to the plaintiffs' request for prejudgment interest, "reassert[ing] its arguments with respect to the legal basis for awarding prejudgment interest." *Marshall v. Anderson Excavating & Wrecking Co.*, No. 8:14-cv-00096-JMG-CRZ, 2019 WL 3943441, at \*2 (D. Neb. Aug. 21, 2019). The district court, however, "reaffirm[ed] its previous ruling" that a legal basis existed for the award. *Id.* It also "t[ook] particular note of Anderson Excavating's complaint that the Court based its award of prejudgment interest on a document which was never signed by Anderson, nor even shown to have been delivered to Anderson, labeled Delinquent Policy and Procedure [DPP]." *Id.* at \*3 (quotations omitted).

The DPP "was adopted by the Board of Trustees [of the Welfare Plan and Pension Plan] at the Trustee Meeting held on February 19, 1985." Appellees' App., Vol. II, at 2. The DPP provides for an "interest rate [of] one and one-half percent, effective rate of 18 percent per annum, on the total amount of Fringe Benefit contributions owed for each delinquent period or partial period." *Id.* It also requires that "a fixed sum of two cents (.02) per delinquent hour . . . be assessed for each delinquent period or partial period to help defray the additional administrative costs

because of late payments." *Id.*[4] At trial, the plaintiffs offered the DPP as an exhibit, and Anderson Excavating objected based on relevance and foundation. Specifically, it argued that the plaintiffs failed to show that Anderson Excavating agreed to the DPP. The district court overruled the objection.

The court determined that "interest on unpaid contributions is determined by the *plan*, not the collective bargaining agreement." *Marshall*, 2019 WL 3943441, at *3. According to the court, "An employer is generally not party to a multiemployer plan, and Anderson Excavating point[ed] to no authority suggesting that an employer's assent to the terms of the plan is required—other, of course, than the employer's implicit assent to the plan when the employer contracts to contribute to the plan." *Id.* Without expressly stating how it arrived at its prejudgment-interest calculation, the district court ordered Anderson Excavating to pay the plaintiffs $4,657.75 in prejudgment interest, a difference of $4,101.32 from the plaintiffs' original request of $556.43.

The district court also awarded $4,657.75 in liquidated damages. *See* 29 U.S.C. § 1132(g)(2)(C).

Finally, the court addressed the plaintiffs' request for $78,574.68 in attorneys' fees. Previously, the court had awarded $38,331.00 based on what it perceived to be

---

[4]The DPP provides the following example of how to calculate interest and liquidated damages:

(Example)—Delinquent month total 1,000 hours and $1,500 dollars

| | |
|---|---|
| 1,000 hours @ .02 per hour | =$20.00 |
| $1,500 @ 1 ½% | =$22.50 |
| Total for each delinquent period | =$42.50 |

*Id.*

"duplicate billing." *Marshall*, 2019 WL 3943441, at *3 (quoting *Marshall v. Anderson Excavating & Wrecking Co.*, No. 8:14-cv-00096-JMG-CRZ, 2017 WL 1054039, at *2 (D. Neb. Mar. 20, 2017)). On remand, however, the plaintiffs explained in their motion that "because the case involves two funds, [counsel] divide[d] the *time* spent on the case equally between the two clients." *Id.* For example, "plaintiffs' counsel billed a total of 9 hours to each of the plans for attending two full days of trial." *Id.* Based on the plaintiffs' explanation, the court "revisit[ed] the issue" of attorneys' fees and found "evidentiary support for the plaintiffs' fee request." *Id.*

The court maintained its prior finding that $155.00 was a fair and reasonable hourly rate. It then explained that it originally awarded "the sum of $38,331 . . . despite the plaintiffs' relatively modest recovery of damages, because Anderson Excavating was equally responsible for the scope of the litigation, and there were nonmonetary aspects to the award that also had value to the plaintiffs." *Id.* at *4. But the plaintiffs' new request for "[t]he sum of $78,574.68 [was] another matter." *Id.* The court found that while "the claims on which the plaintiffs were unsuccessful were related to their successful claims," and "even considering Anderson Excavating's shared culpability, and the nonmonetary success that the plaintiffs achieved," the plaintiffs failed to "achieve a level of success that makes the hours reasonably expended a satisfactory basis for the award they [sought]." *Id.*

As a result, the court "cut the plaintiffs' request in half," concluding the amount of $39,287.34 in attorneys' fees was "sufficiently proportional to the plaintiffs' degree of success, both monetary and nonmonetary, and considering the extent to which the plaintiffs' expenses were engendered by Anderson Excavating's recalcitrance and sloppy bookkeeping." *Id.* The court also found the "reduction

sufficient to encourage the plaintiffs to take a more measured approach to their pursuit of claims against employers." *Id.*[5]

## II. *Discussion*

On appeal, Anderson Excavating again argues that the district court erred in determining (1) prejudgment interest, (2) liquidated damages, and (3) attorneys' fees.

"ERISA authorizes fiduciaries of an employee benefit plan to bring suit to compel the payment of delinquent fund contributions." *32BJ N. Pension Fund v. Nutrition Mgmt. Servs. Co.*, 935 F.3d 93, 98 (2d Cir. 2019) (footnote omitted) (citing 29 U.S.C. §§ 1132(g), 1145). Where the court awards "a judgment in favor of the plan" for delinquent contributions, "the court shall award the plan" the following:

(A) the unpaid contributions,

(B) *interest* on the unpaid contributions,

(C) *an amount equal* to the greater of—

> (i) *interest on the unpaid contributions*, or
>
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) *reasonable attorney's fees and costs* of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2) (emphases added).

---

[5]The court also awarded $475.00 in nontaxable costs.

## 1. *Prejudgment Interest*

Anderson Excavating challenges the district court's award of $4,657.75 in prejudgment interest to the plaintiffs. It highlights the district court's failure to "calculate or set forth precisely how it reached" this amount. Appellant's Br. at 40. It points out that the plaintiffs requested only "prejudgment interest at the rate of 1.5% per month," resulting in an award of "[prejudgment] interest in the amount of $556.43." *Id.* at 41 (quotations omitted). According to Anderson Excavating, "[t]he [d]istrict [c]ourt's ruling makes no mathematical sense when compared to the motion and evidence filed by the [plaintiffs]." *Id.* Additionally, "Anderson Excavating disputes any analysis predicated upon an 1.5% per month/18% per annum interest rate" because the CBA "had no interest rate provision whatsoever related to unpaid contributions." *Id.* at 42. It maintains that "no agreement [exists] between Anderson Excavating and the Trustees as to interest or any particular rate of interest." *Id.* It concludes that no basis exists under Nebraska law "to assess [it] with pre-judgment interest under these facts given the usurious rate." *Id.*

"[I]nterest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). To find the rate provided under the plan, one may look to the parties' trust agreement or the contract that formed the plan. *32BJ N. Pension Fund*, 935 F.3d at 99. "To impose a plan-provided interest rate on a delinquent employer, there is an additional requirement: The employer must be a signatory—or otherwise have agreed to bind itself—to the plan document (here, . . . Trust Agreement[s].)" *Id.*

Here, Anderson Excavating agreed to bind itself to the Welfare Plan's and Pension Plan's trust agreements. The CBA provides, in relevant part, that Anderson Excavating must contribute to the Welfare Plan and the Pension Plan "in accordance

-8-

with the terms and conditions of the[ir] [respective] Trust Agreement." Ex. 1 to Compl. at 16. In turn, the trust agreements—to which Anderson Excavating was bound—vested the Welfare Plan's and the Pension Plan's trustees with authority to impose a "reasonable rate of interest" on a delinquent payment or contribution. Ex. 2 to Compl. at 7, *Marshall v. Anderson Excavating & Wrecking Co.*, No. 8:14-cv-00096-JMG-CRZ (D. Neb. 2014), ECF No. 1-2; Ex. 3 to Compl. at 13, *Marshall v. Anderson Excavating & Wrecking Co.*, No. 8:14-cv-00096-JMG-CRZ (D. Neb. 2014), ECF No. 1-3. In the DPP, the trustees, pursuant to their authority under the Welfare Plan and Pension Plan, selected an "interest rate [of] one and one-half percent, effective rate of 18 percent per annum, on the total amount of Fringe Benefit contributions owed for each delinquent period or partial period." Appellees' App., Vol. II, at 2.

The district court did not err in concluding that the DPP's interest rate applied "[b]ecause § 1132(g)(2) directs that preferentially, 'interest on unpaid contributions shall be determined by using the rate provided under the plan,' . . . and the [DPP] validly adopted by the trustees of the Welfare and Pension Plans specified an interest rate of" 1.5 percent of the total contributions owed for each delinquent period. *Iron Workers Dist. Council of W. N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1508 (2d Cir. 1995) (approving a two-percent per-month interest rate and citing to cases that have approved similar per-month interest rates in ERISA actions).

Anderson Excavating also asks that we vacate the district court's award of prejudgment interest because Nebraska law (1) "provides that interest may not exceed sixteen percent (16%) per annum," (2) "provides that the penalty for seeking a usurious interest rate is the loss of *any* claim of pre-judgment interest," and (3) "imposes a separate condition for obtaining pre-judgment interest on an unliquidated claim" that the plaintiffs did not follow. Appellant's Br. at 43. Anderson

Excavating's arguments fail because, as the district court observed, Anderson Excavating "does not explain why Nebraska state law should apply *to an action arising under ERISA*, a federal statutory scheme," which mandates that the district court award the plan interest on unpaid contributions by using the plan's rate. Findings of Fact and Conclusions of Law at 21, *Marshall v. Anderson Excavating & Wrecking Co.*, No. 8:14-cv-00096-JMG-CRZ (D. Neb. 2016), ECF No. 77 (emphasis added).[6]

Finally, Anderson Excavating requests that we vacate the district court's prejudgment interest award because the court failed to expressly set forth its calculation and did not award the smaller interest amount of $556.43 that the plaintiffs specifically requested in their motion.

The plaintiffs respond that while they did request only $556.43 in prejudgment interest, that request was obviously based on a miscalculation that the district court could correct. We agree that the district court was not bound by the calculation set forth in the plaintiffs' pleading. Section 1132(g)(2)(B) mandates that the district court "award the plan . . . interest on the unpaid contributions . . . . by using the rate provided under the plan," regardless of what the plaintiffs requested. But the plaintiffs admit that the district court failed to set forth its mathematical calculation for reaching an award of $4,657.75; nevertheless, they contend that such calculation is easily discernible from the record. We agree.

The district court's interest award is based on (a) five outstanding delinquent contribution amounts, multiplied by (b) the monthly interest rate of 1.5 percent,

---

[6]*See also* 29 U.S.C. § 1132(g)(2)(B) (stating that "the court shall award the plan . . . interest on unpaid contributions . . . by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26" if "a judgment in favor of the plan is awarded").

multiplied by (c) the number of delinquent months. The delinquencies run from the month when a contribution became due through February 2019—the plaintiffs' requested ending date. *See* Ex. 1 to Mot. for Att'y Fees at 2, ¶ 5, *Marshall v. Anderson Excavating & Wrecking Co.*, No. 8:14-cv-00096-JMG-CRZ (D. Neb. 2019), ECF No. 108-1.

Anderson Excavating owed a contribution of $354.00 for work by Jeff Hightree in April 2013. *Id.* at 4. According to paragraph 2 of the DPP, that contribution became delinquent on the last day of the following month, May 2013. That contribution was delinquent for 69 months from June 2013 to February 2019. *See* Appellees App., Vol. II, at 1–2. The district court calculated the interest by multiplying $354.00 by .015 (representing a monthly interest rate of 1.5 percent), resulting in a monthly interest amount of $5.31. The court then multiplied that monthly interest amount by the number of months for which the contribution was late (69 months), bringing the total interest amount to $366.39.

Repeating this exercise for the for the four contributions attributable to work by Rodney Wachter results in an interest amount of $4,291.36.[7] The sum of the total

[7]The following chart shows the calculations for the Wachter contributions:

| Amount Due | First Month Delinquent | Months Delinquent (through February 2019) | Total Interest (at 1.5% monthly) |
|---|---|---|---|
| $829.35 | December 2012 | 74 | $920.58 |
| $1,496.25 | January 2013 | 73 | $1,638.39 |
| $1,446.98 | February 2013 | 72 | $1,562.74 |
| $159.30 | March 2013 | 71 | $169.65 |
| TOTAL | | | $4,291.36 |

interest amounts through February 2019 for the five outstanding contributions based on work by Hightree ($366.69 in interest) and Wachter ($4,291.36 in interest) is $4,657.75. The district court awarded that amount as prejudgment interest.

Therefore, we affirm the district court's prejudgment-interest award.

## 2. *Liquidated Damages*

Anderson Excavating also appeals the district court's award of $4,657.75 in liquidated damages. The district court based its award upon the amount of prejudgment interest. *See* 29 U.S.C. § 1132(g)(2)(C) (requiring the court to award the plaintiffs "an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the total delinquent contributions); *Marshall*, 2017 WL 1054039, at *1 (concluding that "the interest on the unpaid contributions proved to be the greater amount"). As a result, we also affirm the district court's award of liquidated damages in the amount of $4,657.75.

## 3. *Attorneys' Fees*

Finally, Anderson Excavating challenges the district court's award of $39,287.34 in attorneys' fees to the plaintiffs.

We review a district court's award of attorneys' fees for an abuse of discretion. *Cent. Valley Ag Coop. v. Leonard*, 986 F.3d 1082, 1089 (8th Cir. 2021).

### a. *Reconsideration of Fee Award*

Anderson Excavating argues that "the [d]istrict [c]ourt erred by ignoring principles of res judicata, collateral estoppel, the 'rule of the mandate' and/or the 'law of the case' doctrine . . . by undertaking an upward adjustment of the attorney[s'] fee award when the [plaintiffs] had not challenged or cross-appealed the denial of their

original request for attorney[s'] fees." Appellant's Br. at 32–33. According to Anderson Excavating, our prior decision "did not invite a new Motion for Attorney[s'] Fees, . . . did not invite the introduction of new evidence, . . . [and] did not suggest that an entire reconsideration was appropriate"; instead, our decision "clearly indicat[ed] [that] the [d]istrict [c]ourt should recalculate the existing award . . . given the reduction in the monetary relief obtained." *Id.* at 35–36. Anderson Excavating asserts that if the plaintiffs believed that the district court erred in calculating its original award of attorneys' fees, then they should have cross-appealed in the prior case. Their failure to cross-appeal, Anderson Excavating maintains, means that they "were not entitled to take a second bite of the apple and . . . attempt to correct or explain the inadequate evidence they offered the first time the issue was addressed." *Id.* at 36.

### i. *Failure to Cross-Appeal*

As an appellate court, our "scope of review is limited to issues raised both below and on appeal." *Bethea v. Levi Strauss & Co.*, 916 F.2d 453, 455 (8th Cir. 1990). A party's "failure to file a cross-appeal prohibits an appellee from attempting to enlarge her rights or to lessen her adversary's rights." *Id.* at 456.

In *Bethea*, the defendant appealed an adverse judgment against it under the Age Discrimination in Employment Act (ADEA). *Id.* at 454. On appeal, it argued that the plaintiff failed to make a submissible case of age discrimination, no evidence supported a finding of willfulness to entitle the plaintiff to liquidated damages under the ADEA, and the plaintiff's contract claim was insufficient as a matter of law. *Id.* The plaintiff did not cross-appeal the district court's denial of his motion for front pay and other equitable relief. *Id.* We affirmed the district court's award of actual damages and attorneys' fees for the age discrimination claim, but we reversed the $82,000 liquidated damages award for the defendant's willful discrimination. *Id.* We also reversed the district court's award for the breach-of-contract claim. *Id.* The

plaintiff filed a petition for rehearing by the panel and a petition for rehearing en banc, requesting front pay and equitable relief. This court denied both petitions, and the original "mandate was left unchanged." *Id.* at 455 (footnote omitted).

"When the case returned to the district court for execution of the appellate mandate, [the plaintiff] filed his fourth motion asking for front pay and other equitable relief. In response, the district court held a hearing where [the plaintiff] presented his arguments a fifth time." *Id.* The district court granted the additional equitable relief. *Id.* The defendant appealed. *Id.*

On appeal, the defendant argued that the district court lacked "authority to grant [the plaintiff] additional relief on remand because he waived his right to such relief by failing to cross-appeal the original district court decision." *Id.* We reversed the district court's order awarding the plaintiff loss of wages and benefits and ordered the district court to execute our original mandate. *Id.* We explained that because the district court denied the plaintiff's motion for additional equitable relief, the plaintiff "did not receive all that he requested" and should have "filed a protective cross-appeal." *Id.* at 456. We never "address[ed] the issue of granting further relief to [the plaintiff] in [our] original mandate, because [we] had no authority to do so. [The plaintiff's] failure to file a cross-appeal estopped him from requesting further relief from the Eighth Circuit." *Id.* We pointed out that "the original Eighth Circuit mandate did not explicitly or implicitly direct the district court to conduct further proceedings, the district court was not directed to interpret or apply the decision of the Eighth Circuit. The district court was merely directed to execute the Eighth Circuit's mandate." *Id.* at 457. According to the panel, our "mandate [was] clear: the actual damages and attorney's fee award for the age discrimination claim were affirmed and all other awards were reversed. Therefore, the district court erred in holding further proceedings and deviating from the mandate of the Eighth Circuit." *Id.* The district court lacked the authority "to increase [the plaintiff's] award for the

-14-

age discrimination claim" because "[w]hen the district court issued its final order, the matter was resolved as far as the district court was concerned. [The defendant's] appeal effected a limited revival of the matter before the Eighth Circuit." *Id.* While a cross-appeal "could have broadened the scope of review to include the district court's denial of [the plaintiff's] request for further relief," the plaintiff failed to do so and therefore limited this court's options "to leaving the district court's judgment intact or decreasing the district court's award." *Id.* As a result, we concluded, the district court on remand "was subject to the same limits as the appellate court and had no authority to grant [the plaintiff] further relief." *Id.*

Like the plaintiff in *Bethea*, the plaintiffs here never cross-appealed the original attorneys' fee award; however, unlike in *Bethea*, where the issue of additional equitable relief was *never* before this court due to the plaintiffs' failure to cross-appeal the issue, we had jurisdiction in the first appeal over the district court's order awarding attorneys' fees because Anderson Excavating, dissatisfied with the award, appealed it. We declined to reach the issue, however, stating:

> In summary, we hold that the district court legally erred in applying the alter ego doctrine to justify an award of unpaid contributions for Tovar's work. Our holding necessarily impacts the remaining issues of prejudgment interest, liquidated damages, and attorneys' fees. For that reason, we decline to reach those issues. Should Anderson Excavating remain dissatisfied with the reconfigured amounts following remand, it may file another appeal challenging those calculations.

*Marshall*, 901 F.3d at 944. We reversed the district court's judgment and "remand[ed] for further proceedings consistent with [our] opinion." *Id.*

The question, therefore, is whether, on remand, the district court followed our mandate.

-15-

## ii. *Mandate*

Once we render a decision on appeal, "[u]nder the law[-]of[-]the[-]case doctrine, a district court must follow our mandate, and we retain the authority to decide whether the district court scrupulously and fully carried out our mandate's terms." *Jaramillo v. Burkhart*, 59 F.3d 78, 80 (8th Cir. 1995); *see also Bethea*, 916 F.2d at 456 ("On remand, a district court is bound to obey strictly an appellate mandate."). "When an appellate court remands a case to the district court for further proceedings consistent with the appellate decision, all issues the appellate court decides become the law of the case." *Bethea*, 916 F.2d at 456. Under the law-of-the-case doctrine, courts must "follow decisions made in earlier proceedings to prevent the relitigation of settled issues in a case, thereby protecting the settled expectations of parties, ensuring uniformity of decisions, and promoting judicial efficiency." *Id.* at 456–57.

As an appellate court, we "ha[ve] authority to review the district court's actions and order it to comply with the original mandate." *Id.* at 456. In the absence of "explicit or implicit instructions to hold further proceedings, a district court has no authority to re-examine an issue settled by a higher court." *Id.*

In *Bethea*, the defendant "argue[d] that the district court violated the law of the case doctrine when it deviated from the Eighth Circuit mandate." *Id.* We noted that our "original . . . mandate did not explicitly or implicitly direct the district court to conduct further proceedings"; therefore, "the district court was not directed to interpret or apply the decision of the Eighth Circuit." *Id.* at 457. We concluded that our "mandate [was] clear: the actual damages and attorney's fee award for the age discrimination claim were affirmed and all other awards were reversed." *Id.* As a result, we held that "the district court erred in holding further proceedings and deviating from the mandate of the Eighth Circuit." *Id.*

Unlike in *Bethea*, we expressly remanded for further proceedings on the issue of attorneys' fees. We declined to address the issue because "[o]ur holding necessarily impact[ed] the . . . issue[] of . . . attorneys' fees." *Marshall*, 901 F.3d at 944. We anticipated that the district court would "reconfigure[] [the] amounts following remand." *Id.* Therefore, we "remand[ed] for further proceedings consistent with [our] opinion." *Id.* Our directive necessarily means that the attorneys' fee issue was not a "settled issue[]" within the meaning of the law-of-the-case doctrine. *See Bethea*, 916 F.2d at 456. We never decided the attorneys' fee issue and instead gave the district court "explicit . . . instructions to hold further proceedings [on remand]." *Id.* Nothing in our prior opinion limited the district court's consideration of the attorneys' fee award.

### b. *Award of Attorneys' Fees*

We now address Anderson Excavating's argument that the district court erred in calculating the award of attorneys' fees.

Section 1132(g)(2)(D) "governs the availability of attorney's fees in ERISA actions under § 1145 (actions to recover delinquent employer contributions to a multiemployer plan). In such cases, only plaintiffs who obtain 'a judgment in favor of the plan' may seek attorney's fees." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252 (2010) (quoting 29 U.S.C. § 1132(g)(2)(D) (providing that "[i]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant")). "Just what is a reasonable attorneys' fee is a matter peculiarly within the district court's discretion." *Greater Kan. City Laborers Pension Fund v. Thummel*, 738 F.2d 926, 931 (8th Cir. 1984) (applying 29 U.S.C. § 1132(g)(2)(D)).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "As a general rule, a reasonable hourly rate is the prevailing market rate, that is, 'the ordinary rate for similar work in the community where the case has been litigated.'" *Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002) (quoting *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001)). This method of calculation is referred to as the "lodestar" method. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986). Courts have applied the lodestar method to an award of attorneys' fees under § 1132(g)(2). *See, e.g.*, *Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801–03 (D.C. Cir. 1998); *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401–02 (6th Cir. 1995).

After a district court determines the lodestar amount, it "may [then] consider other factors to 'adjust the fee upward or downward, including the important factor of the "results obtained."'" *Smith v. AS Am., Inc.*, 829 F.3d 616, 623 (8th Cir. 2016) (quoting *Marez v. Saint-Gobain Containers, Inc.*, 688 F.3d 958, 965 (8th Cir. 2012)). "[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees . . . . [W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 440. Our precedent directs courts to consider whether the plaintiff failed on unrelated claims in the case and whether the plaintiff's level of success "makes the hours reasonably expended a satisfactory basis for making a fee award." *Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 429 (8th Cir. 2017) (quoting *Hensley*, 461 U.S. at 434).

However, "[t]he Supreme Court [has] recognized '[t]here is no precise rule or formula' for determining a reasonable fee award in light of a plaintiff's partial degree

of success." *Phelps-Roper v. Koster*, 815 F.3d 393, 398 (8th Cir. 2016) (third alteration in original) (quoting *Hensley*, 461 U.S. at 436). "[W]e have followed the Supreme Court and rejected calculating fee awards based simply on the number of claims upon which the plaintiff prevailed." *Id.*

Several cases have "reject[ed] a strict rule requiring proportionality between damage awards and fee awards" in ERISA cases. *Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emps v. Ray Haluch Gravel Co.*, 745 F.3d 1, 6 (1st Cir. 2014) (citing *Orth v. Wis. State Emps. Union, Council 24*, 546 F.3d 868, 875 (7th Cir. 2008); *UAW Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 292–95 (3d Cir. 2007); *Grandview Raceway*, 46 F.3d at 1401). "These cases refuse to impose a requirement that trial judges make fee awards proportionate to the damages recovered. . . . [T]his view is hardly controversial given the Supreme Court's conclusion that fee awards need not be proportional to damage awards." *Id.* (emphasis omitted) (citing *City of Riverside v. Rivera*, 477 U.S. 561, 580–81 (1986) (plurality op.)).

"In a lodestar case, refusing to require that fee awards be strictly proportionate to damages awards makes eminently good sense." *Id.* This is because "'[t]here are fixed costs of litigation,' so a rigid proportionality rule would allow defendants to 'inflict[] with impunity small losses on the people whom they wrong.'" *Id.* (alterations in original) (quoting *Orth*, 546 F.3d at 875). But a fee-setting court is not forbidden, "in appropriate circumstances, from considering proportionality as one factor among many in determining the amount of fees." *Id.* (citing *City of Riverside*, 477 U.S. at 574). As a result, "a fee-setting court can take the amount of damages recovered into account." *Id.* But "proportionality cannot be used as the sole determinant of a lodestar-based fee award." *Id.*

We conclude that the district court did not abuse its discretion in awarding the plaintiffs $39,298.34 in attorneys' fees. *See G&K Servs. Co. v. Bill's Super Foods, Inc.*, 766 F.3d 797, 800 (8th Cir. 2014) (holding that the district court did not abuse its discretion in awarding $82,766.50 in attorneys' fees to the prevailing party in a breach-of-contract action, despite the defendant's argument that the award was excessive in light of the plaintiff's degree of success, because "the district court expressly considered [the plaintiff's] degree of success and reduced its requested award by $22,860 based on time devoted to unsuccessful causes of action"). The plaintiffs requested $78,574.68 in attorneys' fees. Previously, the court had awarded $38,331.00 based on what it perceived to be "duplicate billing." *Marshall*, 2019 WL 3943441, at *3. On remand, however, "[t]he plaintiffs' counsel . . . explained their records: because the case involve[d] two funds, they divide[d] the *time* spent on the case equally between the two clients." *Id.* Based on the plaintiffs' counsels' explanation, the court "revisit[ed] the issue" of attorneys' fees and found "evidentiary support for the plaintiffs' fee request." *Id.*

First, the court determined the hourly rate. *See Hensley*, 461 U.S. at 433. The court did not disrupt its prior finding of a "fair and reasonable" "hourly rate of $155." *Marshall*, 2019 WL 3943441, at *4.

Second, the court discussed the nonmonetary facts that influenced its attorneys' fee award. *See G&K Services Co.*, 766 F.3d at 800. Specifically, it explained that it originally awarded "the sum of $38,331 . . . despite the plaintiffs' relatively modest recovery of damages, because Anderson Excavating was equally responsible for the scope of the litigation, and there were nonmonetary aspects to the award that also had value to the plaintiffs." *Marshall*, 2019 WL 3943441, at *4.

Third, the court acknowledged the plaintiffs' limited success in determining whether to award the amount of attorneys' fees that the plaintiffs requested. *See*

*Hensley*, 461 U.S. at 440. The court found that while "the claims on which the plaintiffs were unsuccessful were related to their successful claims," and "even considering Anderson Excavating's shared culpability, and the nonmonetary success that the plaintiffs achieved," the plaintiffs failed to "achieve a level of success that makes the hours reasonably expended a satisfactory basis for the award they [sought]." *Marshall*, 2019 WL 3943441, at *4. As a result, the court "cut the plaintiffs' request in half." *Id.*

Although the court's ultimate attorneys' fee award exceeds its remedial award, *see Orth*, 546 F.3d at 875, the court adequately justified its award of $39,287.34 in attorneys' fees to the plaintiffs. As the court explained, the award was "sufficiently proportional to the plaintiffs' degree of success, both monetary and nonmonetary, and consider[ed] the extent to which the plaintiffs' expenses were engendered by Anderson Excavating's recalcitrance and sloppy bookkeeping." *Marshall*, 2019 WL 3943441, at *4. The court also found the "amount sufficient to encourage Anderson Excavating to be more reasonable and careful going forward, and a reduction sufficient to encourage the plaintiffs to take a more measured approach to their pursuit of claims against employers." *Id.*

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____